UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONIVLLE DIVISION

Case No. 3:19-cv-00222-J-20JRK

CAROLYN ANDERSON,

     Plaintiff,

v.

R. SNOWDEN SMITH,
and ELENA GEORGOUSES,

     Defendants.

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff CAROLYN ANDERSON brings this First Amended Complaint against Defendants R. SNOWDEN SMITH and ELENA GEORGOUSES and alleges as follows:

1.    Plaintiff is suing for the defamation caused directly by the Defendants' publication of a false, malicious, and reckless document which was calculated to damage her character and reputation as well as to intentionally cause fear, anxiety, humiliation, emotional distress and other damages to Plaintiff.

## PARTIES, JURISDICTION & VENUE

2.    Plaintiff Carolyn Anderson ("Carolyn" or "Ms. Anderson") is an individual, a non-public figure, and a citizen of Florida with her personal residence in the Coastal Oaks at Nocatee community located in Ponte Vedra, Florida. Carolyn Anderson was married to Michael Anderson ("Mike") who committed suicide on February 27, 2017, in Vail, Colorado. Mike Anderson is the birth father of Carolyn's two young children.

3.      Defendants R. Snowden Smith and Elena Georgouses are residents of Colorado and engaged in tortious conduct within the State of Florida as well as conduct that caused damages within the State of Florida.

4.      This is an action for damages in excess of Two Million Five Hundred Thousand Dollars ($2,500,000.00), exclusive of interest, costs, and attorneys' fees.

5.      This action was originally brought in the Circuit Court of the Seventh Judicial Circuit in and for St. Johns County, Florida.

6.      Defendants removed the action to this Court alleging that complete diversity of citizenship exists between Plaintiff and Defendants and this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332.

7.      Venue is proper in the Jacksonville Division of the Middle District of Florida because the conduct asserted caused substantial damages to Plaintiff in St. Johns County, Florida, and St. Johns County is within this division.

## FACTS

**A.      Background**

8.      The Defendants, Smith and Georgouses, were close friends with Mike and Carolyn Anderson; they took vacations together and frequently had dinner together. During these times, Defendant Snowden Smith, and sometimes with his son Peter Smith, would spend his free time talking solely to Mike Anderson about Mike's business, Mike's investment history and strategies, Mike's "proprietary algorithm" for investments, Mike's sale of his hedge-fund business to Blackrock, Mike's day-trading, and Defendant Smith's personal investments with Mike's business.

9.     The Defendants are sophisticated securities investors who conducted business and investments directly with Mike Anderson. The Defendants knew that Carolyn did not understand or trade securities and had no knowledge of Mike's business. These Defendants conducted all their securities transactions directly, and only, with Mike Anderson to whom they gave full discretionary authority. The Defendants knew Mike Anderson was directly and personally responsible for all the investments made on their behalf and knew that Mike operated the entities that controlled the investments.

10.     Defendants arranged for their son, Peter Smith, to intern directly with Mike Anderson at Mike's office during summers and vacations. Upon information and belief, Peter Smith prepared a senior project about Mike Anderson's business. The Defendants, and Peter, knew that Carolyn did not understand the investment business; that she did not work at Mike's business office and she knew nothing about Mike's business or investments.

11.     The Defendants knew that Carolyn Anderson was an "investor" with Mike Anderson's Rainbow Partners. The Defendants were told that Mike Anderson misappropriated Carolyn's personal savings, which totaled more than $1.061 Million, to establish and perpetuate his securities fraud scheme, which included the End of the Rainbow Foundation and End of the Rainbow Partners.

12.     Carolyn told these Defendants that she believed that Mike Anderson's business was legal and proper because she was aware that more than 15 sophisticated investors had completed their due diligence and believed that Mike Anderson was a successful investor and former hedge fund manager who was retired and did not have to work because he sold his business to Blackrock for $17 Million based upon Blackrock's

belief that Mike Anderson had created a "proprietary algorithm" that generated accurate investment information that would produce a profit of between 1% and 4% per month on a regular basis.

13.     Although these Defendants had requested Mike to invest their personal funds, Mike Anderson at first turned them down by claiming he was "retired" because he had a "confidentiality agreement and non-compete agreement" with Blackrock which prohibited him from investing other people's money and he could not give any references, or disclose terms, because of the confidentiality agreement.

14.     Upon information and belief, these Defendants were lured to invest with Mike because Mike claimed he was able to "come out of retirement" and was able to avoid his confidentiality and non-compete agreements with Blackrock by (1) not charging a management fee to his investors, but he would require the investors to donate between 12.5 and 20% of their profits per month to End of the Rainbow Foundation, a designated IRC 501(c)(3) charitable foundation, permitting all donations to be tax deductible and (2) the business, although registered in Carolyn's name, was just a "front" to allow Mike to conceal his involvement with investing other people's money and Mike would be in 100% control of the funds and the investments made by End of the Rainbow Partners and the transfers to Rainbow Foundation. This is the same story Mike Anderson told all the investors.

15.     These Defendants, like every victim of Mike Anderson's securities fraud scheme, were "conned" by Mike Anderson's classic use of a "confidence trick" which is defined as follows:

> A **confidence trick** is an attempt to defraud a person or group after first gaining
> their confidence, used in the classical sense of trust. Confidence tricks exploit

characteristics of the human psyche, such as credulity, naivete, compassion, vanity, irresponsibility and greed.  Researchers Lindsey Huang and Barak Orbach defined the scheme as "a distinctive species of fraudulent conduct ... intending to further voluntary exchanges that are not mutually beneficial", as they "benefit con operators ('con men') at the expense of their victims (the 'marks')"

16.    At some point in time, Michael Anderson was accused of securities fraud by investors in his business and eventually the Securities and Exchange Commission ("SEC").

17.    On February 27, 2017, these Defendants were aware that Carolyn found Mike Anderson lying on the garage floor having been overcome by carbon monoxide and that Mike died that day. As friends, the Defendants knew Carolyn was completely distraught, emotionally overwhelmed, and gravely mourning because of the sudden loss of her husband, and the children's father, by suicide. The Defendants were aware of Carolyn's fragile emotional state and the Defendants allowed Carolyn and her children to stay at their house overnight after Mike died.

18.    Regardless of their knowledge that Carolyn was not a participant in Mike's business and did not have any knowledge about their investments, these Defendants later started to stalk Carolyn to exact revenge. Thereafter, Defendant Georgouses, feigning concern, frequently visited Carolyn and used a "pretext" to search the upstairs of Carolyn's house. After Carolyn moved from her house into a borrowed condo, without telling the Defendants, Defendants stalked Carolyn and her children. Defendants used their own children to contact Carolyn's children at school to investigate where Carolyn was staying.  Defendants used pretexts to pressure Carolyn for money and information because Mike Anderson's former investors wanted information and to seek revenge.

19.     Defendants knew that Carolyn was under incredible pressure, anxiety, and emotional distress at this time because of the combination of events of her husband's death and the unexpected backlash from Mike's investors and from her friends, the Defendants.

20.     These Defendants knew that Carolyn was emotionally fragile and had a feeling of paranoia because she was the subject of investor suspicions created by Mike Anderson's suicide death and the investigations by the Vail PD and the SEC.

21.     The Defendants knew that Carolyn voluntarily submitted to a 3-hour interview by the Vail PD and the SEC during which she confirmed that she knew nothing of Mike Anderson's business. These defendants were aware that Carolyn voluntarily agreed to an SEC deposition that lasted in excess of 7 hours and they knew that when Carolyn discovered Mike Anderson's "confession" and other documents which she immediately provided to the Vail PD and the SEC.

22.     The Defendants knew that Mike Anderson's confession confirmed that Carolyn knew nothing of Mike's securities fraud and that Mike had conned Carolyn, like he conned the other investors, and secretly conducted business by using and forging Carolyn's name and signature as part of his securities fraud.

23.     These Defendants were participants in a lawsuit, filed on behalf of the Rainbow Partners investors, and others, in the United States District Court in Colorado (End of the Rainbow Partners, LLC, et al. v. Carolyn Anderson, et al., Civil Action No.: 1:17-cv-01568-RBJ) which alleged that Michael Anderson committed securities fraud and, in pertinent part, that Carolyn Anderson was a participant in Mike Anderson's securities fraud. However, these Defendants were aware that case was terminated by a

Voluntary Dismissal With Prejudice because of a complete failure of proof. The investor Plaintiffs were unable to provide any proof whatsoever that Carolyn traded any stocks, made any investment decisions, or recruited any investors and that she had no business discussion with any of the investors about Mike's business.

24.     Because of their personal investment experience with Mike Anderson, and their hours of conversation between Defendant Smith and Mike about how his business was operated, these Defendants knew that Carolyn never traded any stocks, never made any investment decision, never recruited any investors, and that she never had a business discussion with them about Mike's investment business.

25.     After Mike Anderson died under suspicious circumstances, Carolyn told these Defendants she did not know anything about Mike's business and that she was also a victim of Mike's securities fraud. Carolyn told them that Mike Anderson misappropriated Carolyn's personal savings for nearly 2 years to give the appearance as a successful investor who was retired and did not have to work. As part of Mike's security fraud scheme, Mike used Carolyn's funds to create Rainbow Foundation, pay the lawyers to obtain the IRS 501(c)(3) designation and to rent an elite business office for Rainbow Foundation to "advertise" his fake image by visibly performing his day-trading activities within sight of prospective investors.

26.     These Defendants used connections to determine where Carolyn lived when she relocated to in Florida and Defendants knew that Carolyn was under incredible pressure, anxiety, and emotional distress at this time because of the combination of events of her husband's death and the backlash from investors and the Defendants' personal efforts to contact Carolyn.

**B.     Defendants' Actions**

27.     Defendants, on or around December 2017, cut a newspaper article headlined "Vail widow sued for scam" out of the November 16, 2017, issue of the *Vail Daily* newspaper (the "*Vail Daily* Article")[1] and they carefully mounted their cuts of paper to capture a readable copy of the entire article on 8.5" x 11" paper and they sent it to Carolyn at her new home address in Florida with a short note stating: "You and Mike broke our hearts and destroyed our financial future. Merry Christmas. Mick." [Exhibit B is the Defendants' note together with the *Vail Daily* Article composite attached].

28.     After reading the letter Defendants sent to her, Carolyn suffered even more anxiety, emotional distress, paranoia and fear that she and her children were being stalked and targeted for physical harm by investors who read this completely false article, especially since it was now evident that these angry stalkers had tracked her all the way to her new home in Florida. Carolyn was outraged by false depiction of Carolyn acting in concert with Mike Anderson to perpetrate a fraud on her close friends, when in truth and in fact, the SEC Complaint said the exact opposite:  Carolyn was NOT a participant in Mike Anderson's security fraud scheme.  At the same time, Carolyn became fearful that her new neighbors, far away from stress of Vail, Colorado, would find the *Vail Daily* Article on the Internet and could be inclined to spread these false and scandalous statements of fact and believe them to be true, especially since it falsely characterized Carolyn as guilty of fraudulent, immoral, and illegal conduct who is willing to scam her close friends out of millions of dollars, which attracted the attention of the SEC, the US Government Agency

---

[1] The pertinent pages of the *Vail Daily* is attached as Exhibit A and has many false and defamatory statements, which are discussed in detail, *infra.*

charged with the responsibility to combat securities fraud  and the Vail PD.  Carolyn was nearly paralyzed with fear that these false and scandalous accusations, appearing in the Vail Daily newspaper, would somehow be discovered throughout her community which would affect her children, their schools, Carolyn ability to get a job or to work as a volunteer at the school. The emotional impact of the note and the Vail Daily composite caused the need to increase in her psychological visits and for an increase in medications to cope with her stress and mental anguish.

29.    Defendants then took their targeting a step further. In a remarkably despicable act, around March 2018, Defendants anonymously mailed a false and defamatory 8.5" x 14" document to more than twenty of Carolyn's new neighbors in Carolyn's small, gated community of Coastal Oaks at Nocatee in Ponte Vedra, Florida which included her children's boy scout leader, her children's teachers and classmates, the HOA office manager of the development and to other people whose jobs and daily living would involve contact with Carolyn throughout her new community

30.    The document read as follows:

## ATTENTION PONTA VEDRA RESIDENTS

### BEWARE OF YOUR NEW NEIGHBOR

Last May, Carolyn Anderson relocated to your neighborhood (18 Lighthouse Point Circle) after fleeing Vail, Colorado where, over five years, she and her husband defrauded investors of $5.3 million dollars. The injured parties were from both Colorado and Florida.

Carolyn is a compulsive liar, thief and skilled con artist.

Do not trust Carolyn or anyone associated with her.

[The composite of *Vail Daily* Article, exactly identical to the one that Defendants sent to

Carolyn in December, was fully reproduced on
the same page below the scandalous message
against Carolyn.]

[The entire document is reproduced in Exhibit C.]

31.    Upon information and belief, Defendants published the false and defamatory statements by mailing a copy of Exhibit C to Carolyn's neighbors, which envelopes were individually addressed to "Our Neighbors" and then caused them to be delivered to the Ponte Vedra, Florida, residents living at 28 Lighthouse Pointe Circle, 36 Lighthouse Pointe Circle, 50 Lighthouse Pointe Circle, 66 Lighthouse Pointe Circle, 80 Lighthouse Pointe Circle, as well as to the Ponte Vedra, Florida residents  living at 77 Portsmouth Bay, 125 Portsmouth Bay, 149 Portsmouth Bay, 159 Portsmouth Bay, 171 Portsmouth Bay, 198 Portsmouth Bay, 257 Portsmouth Bay, 405 Portsmouth Bay, 417 Portsmouth Bay and 433 Portsmouth Bay as well as to the Ponte Vedra, Florida residents living at 30 Cumberland Island Circle, 31 Cumberland Island Circle as well as to the Ponte Vedra, Florida residents living at 58 Beach Club Court, 75 Payne Trail, 191 Cumberland Island, 158 Cumberland Island, 82 Tarpon Bay Court and 616 Stone Ridge Drive.

32.    The publication of Exhibit C to Carolyn's neighbors had special significance to the occupants at 77 Portsmouth Bay who were Sales Associates at Toll Brothers, the developer of this neighborhood; the occupant at 257 Portsmouth Bay and 82 Tarpon Bay Court, which was the Office Manager and the Social Committee Person for the Nocatee Homeowner's Association; to the occupant at 616 Stone Ridge Drive who was a local business owner and the parent of Carolyn's daughter's classmate; to the occupant at 58 Beach Club Court and at 75 Payne Trail, each of which were School Teachers for Carolyn's daughter; 539 Old bluff Road which was the Soccer Coach for Carolyn's son;

10

the occupants at 181 Cumberland Island and 158 Cumberland Island which was the Boy Scout Pack Leader and the Boy Scout Den Leader, respectively, for Carolyn's son.

33.    This document contained several false and defamatory statements of fact, both in the message typed in the document and in the included *Vail Daily* Article.

**C.    The *Vail Daily* Article**

34.    This will begin with the false and defamatory statements in the *Vail Daily* Article. The *Vail Daily* Article was cut out of a newspaper and custom mounted onto the 8.5" x 14" paper to which Defendants further defamation and published to Carolyn's new community in an anonymous letter to Carolyn's neighbors. [Exhibit C].

35.    On November 16, 2017, the *Vail Daily* newspaper published a false and defamatory article with the headline: **"Vail widow sued for scam."** The article is incorporated by reference. [Exhibit A].

36.    The *Vail Daily* Article included the following false and defamatory statements:

- "Vail widow sued for scam"

- "Securities and Exchange Commission lawsuit claims woman and now-deceased husband defrauded investors of $5.3M."

- "Carolyn Anderson sued by SEC and investigated by Vail police for alleged ponzi scheme"

- "VAIL – A federal financial watchdog is suing the widow of a former Vail resident, saying she was part of her deceased husband's ponzi scheme."

- "The Securities and Exchange Commission sued Carolyn Anderson in Denver District Federal Court last week, claiming that she and husband Michael Anderson scammed 18 investors out of more than $5.3 million between March 2014 and his death on Feb. 27, 2017. Many of those people considered the Andersons to be close friends, the SEC said.

- "Retired Baltimore Ravens tight end Quinn Sypniewski . . . was one of a dozen and a half people who the SEC says the Andersons scammed."

- "Meanwhile, the Andersons transferred more than $2.3 million in investor money to Bighorn Wealth Fund L.P., Rainbow Foundation and Seaoma, all based in Vail and all owned by Michael and Carolyn Anderson, the SEC said.

- "SEC attorney Leslie Hughes is charging Carolyn Anderson with securities fraud and is asking for a jury trial in U.S. District Court in Denver before Chief Judge Marcia S. Krieger."

**D.    The SEC Lawsuit Contradicts these False Statements of Fact**

37.    All of the statements of fact outlined in the preceding paragraph from the *Vail Daily* Article are false and defamatory. This is demonstrated and confirmed by the SEC's Complaint filed with the United States District Court and the Press Release issued by the SEC to announce the court filing.

38.    The SEC filed a complaint related to this matter on November 8, 2017, ("SEC Complaint")[2] and published a litigation release on November 14, 2017 ("SEC Litigation Release").[3] A reading by any reasonable person of the SEC's Complaint and Litigation Release reveals that Carolyn is not accused of any wrongdoing. The SEC plainly accuses only Michael Anderson (acting himself or through his companies) of securities fraud.

39.    Specifically, the explicit language of the SEC Complaint, requesting judicial notice of (ECF 1) in Case No. 17-cv-02630-MSK pending in the United States District Court of Colorado, which stated the following in the identified paragraphs:

---

[2] A copy of the complaint can also be found on the SEC website at: https://www.sec.gov/litigation/complaints/2017/comp23987.pdf.
[3] A copy of the SEC Press Release No. 23987 can also be found on the SEC website at: https://www.sec.gov/litigation/litreleases/2017/lr23987.htm.

a. Ms. Anderson was not named as a "Defendant" in the caption of the SEC Complaint, and

b. Ms. Anderson was merely listed as a relief defendant in the lawsuit. Legally, a relief defendant is a nominal defendant that is not accused of any wrongdoing. Relief defendants are nominal, innocent parties who hold funds that they may have no legitimate claim or ownership interest in.

c. Paragraph 1 of the SEC Complaint states:

This SEC enforcement action involves a fraudulent, securities offering conducted through Rainbow Partners by Michael F. Anderson, its deceased principal. Through his fraudulent scheme, Mr. Anderson misappropriated over $2.3 million from Rainbow Partners' investors. Prior to his death, Mr. Anderson, in a sworn affidavit, admitted defrauding Rainbow Partners' investors by among other things, misappropriating investor funds, fabricating account statements, and making Ponzi-like payments.

d. Paragraph 2 of the SEC Complaint states, in pertinent part:

From approximately March 2014 through the time of Mr. Anderson's death in February 2017, Rainbow Partners and Mr. Anderson raised approximately $5.3 million from 18 investors, many of whom considered Mr. Anderson to be a close friend.

e. Paragraph 6 of the SEC complaint states:

As a result of the conduct described herein, Defendants Rainbow Partners and Mr. Anderson violated the anti-fraud provisions of the federal securities laws. Specifically, Rainbow Partners and Mr. Anderson engaged in a scheme to defraud, thereby violating Section 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)], and Rules 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5]. Rainbow Partners and Mr. Anderson also obtained money from investors by means of and made materially misleading statements and omissions to investors concerning their investments, and have thus violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

f.  Paragraph 11 of the SEC complaint states, in pertinent part:

In December 2014, Mr. Anderson was listed as the managing member in the LLC Agreement, and he controlled and directed the activities of [Defendant] Rainbow Partners until his death on February 27, 2017.

g.  Section V. A. of the SEC complaint states, in bold font:

**Rainbow Partners, through Mr. Anderson, Raised Money Based upon Numerous False and Misleading Statements.**

h.  Paragraph 17 of the SEC complaint states:

From March 2014 through February 2017, Rainbow Partners, acting through Mr. Anderson, raised approximately $5.3 million from 18 investors through the sale of membership interests in Rainbow Partners, which are securities in the form of investment contracts.

i.  Paragraph 21 of the SEC complaint states:

Michael Anderson controlled Rainbow Partners' business operations, including soliciting and communicating with investors, making trading decisions, and preparing and distributing monthly account statements to investors.

j.  Paragraph 22 of the SEC complaint states:

Michael Anderson exercised control over Rainbow Partners' bank and brokerage accounts. Mr. Anderson executed electronic inter-bank transfers by electronically logging in under Ms. Anderson's user credentials, without her knowledge or consent. He directed Ms. Anderson to sign blank checks on behalf of Rainbow Partners, and then he subsequently completed the payment information on the Rainbow Partners' checks. He also forged Ms. Anderson's signature on brokerage account documents.

40.  Further, the explicit language of the SEC Litigation Release (for which we respectfully request judicial notice of SEC Press Release No. 23987 which can be found

on the SEC website at: https://www.sec.gov/litigation/litreleases/2017/lr23987.htm)

included, but is not limited to, the following:

    a.  Paragraph 2 of the SEC Litigation Release states:

> The SEC alleges that Michael F. Anderson and his company, The End of the Rainbow Partners, L.L.C. (Rainbow Partners), raised approximately $5.3 million from investors who were told that Anderson was a retired, successful hedge fund manager who intended to day trade their funds using a proprietary algorithm.  Claiming he no longer needed income and instead wanted to help friends and charitable causes, Mr. Anderson falsely told investors that he would fund his wife's charitable organization for abused women and children, The End of the Rainbow Foundation, Inc (Rainbow Foundation), with up to 20% of his trading profits and divide the remaining profits among investors.

    b.  Paragraph 4 of the SEC Litigation Release states:

> In addition to misappropriating investor funds, the SEC alleges that Rainbow Partners and Mr. Anderson incurred substantial trading losses of nearly $600,000 while falsely assuring investors that trading was profitable.  To hide these losses, the SEC alleges that Rainbow Partners, through Mr. Anderson, generated and distributed fabricated account statements to investors reflecting non-existent profits and used approximately $1.9 million in investor money to repay other investors in a Ponzi-like scheme.  In a sworn affidavit drafted before his death, Mr. Anderson admitted to much of the misconduct alleged in the SEC complaint.

41.    The SEC is clear, Mike Anderson is the perpetrator of the fraud and was entirely responsible for the fraud. Carolyn is not accused of any wrongdoing in the SEC's lawsuit. The SEC lawsuit is explicit that Carolyn had no participation in the business conducted by her now-deceased husband. Although the SEC made detailed allegations of wrongdoing against Mike Anderson, the SEC specifically excludes Carolyn from any fraudulent conduct. The SEC Complaint does not allege that Carolyn violated the Securities Act of 1933, the Exchange Act of 1934, SEC Rule 10b-5 or otherwise engaged

in any actionable misconduct. She was not sued for "securities fraud" nor was a participant in the fraudulent conduct of Michael Anderson.

42.     The SEC **did not:** (1) sue Ms. Anderson for a scam, (2) claim that Ms. Anderson defrauded investors of $5.3 million, (3) accuse Ms. Anderson of being a part of a ponzi scheme, (4) claim Ms. Anderson scammed 18 investors out of more than $5.3 million, (5) transfer $2.3 million in investor money to Bighorn Wealth Fund L.P., nor (6) charge Carolyn Anderson with securities fraud. All of these actions were directed towards Michael Anderson.

43.     The Vail Police Department's investigative report, which Defendants were also aware of, included former Baltimore Raven's tight end Quinn Sypniewski's interview where Officer Joseph Schreiner documented that:

> After gathering this information, I asked Mr. Sypniewski if Ms. Anderson has anything to do with either the foundation or the partnership. Mr. Sypniewski advised she does not and acts as a shell so that Mr. Anderson can operate both entities. According to Mr. Sypniewski, Mr. Anderson signed a non-competition clause when he sold a financial business in 2008 so he uses his wife as a head for his business ventures."

**E.     Defendants' Introductory Message before the *Vail Daily* Article**

44.     Defendants also published some maliciously false remarks to introduce the *Vail Daily* Article to Carolyn's community:

<u>**ATTENTION PONTE VEDRA RESIDENTS**</u>

BEWARE OF YOUR NEW NEIGHBOR

> Last May, Carolyn Anderson relocated to your neighborhood (18 Lighthouse Point Circle) after fleeing Vail, Colorado where, over five years, she and her husband defrauded investors of $5.3 million dollars. The injured parties were from both Colorado and Florida.

Carolyn is a compulsive liar, thief and skilled con artist.

Do not trust Carolyn or anyone associated with her.

[See: Exhibit C].

45.     These statements of fact assert that Carolyn has violated SEC rules and/or regulations, which is a felony offense with a penalty of up to five years in federal prison. Also, calling Carolyn a thief and con artist accuses her of a felony as well.

46.     As shown above by the dismissed private lawsuit by the investors and the SEC's lawsuit, and more that will be proved in litigation, all statements of fact in this excerpt are false and defamatory. Carolyn did not defraud investors and Carolyn is not a compulsive liar, thief, or skilled con artist. She was never convicted of fraud, theft, or anything of the like.

47.     Defendants' publication also subjected Carolyn to hatred, distrust, ridicule, contempt, and disgrace from her community which caused severe mental and emotional distress and extreme anxiety and paranoia and fear requiring additional therapy and an increase in medications.

**F.      Defendants' Knowledge, Reckless Disregard, and/or Negligence as to the Falsity of their Statements**

48.     Defendants acted with knowledge and/or reckless disregard of the falsity of their statements of facts published to the neighbors, both because of their prior relationship with Carolyn as described in paragraphs 8 through 26 of this Complaint and because Defendants were familiar with the private lawsuit that was dismissed with prejudice (see paragraph 23). Also the Defendants had access to, knew, or should have known the SEC's Lawsuit, including the investigation the SEC conducted, the SEC's filed complaint, and the SEC's litigation release because they were former investors in Mike

Anderson's investment business (see paragraphs 8 through 26 and 37 through 43). Defendants were also familiar with the Vail PD's published investigation of the allegations as well.

49.     Defendants were privy to actual knowledge and information that they knew or should have known made their statements of fact maliciously false in their publication.

50.     Defendants knew and should have known that Mike Anderson was the perpetrator of the fraud and that Carolyn had no participation in or knowledge about the operations of Mike Anderson's business and his securities fraud scheme.

51.     This was not just a lack of exercising reasonable care in making these statements, the Defendants' had explicit knowledge that contradicted their cruel, blatantly false, and defamatory statements these Defendants published directly to Carolyn Anderson's neighbors within the small, gated community Coastal Oaks at Nocatee.

52.     At minimum, the Defendants failed to use reasonable care, that is the care that a reasonably careful person would use under the circumstances before making these blatantly false and defamatory statements of fact about Carolyn, especially given their access to and knowledge of information that proves the falsity of their statements.

**G.     The Defendants' Statements are Defamatory**

53.     This document, including both the introductory remarks and the Defendants' composite of the *Vail Daily* Article, was published to third parties and was maliciously calculated to damage Carolyn's character and reputation and standing among the members of her new community. The introductory remarks accuse Carolyn of a willful violation of SEC rules and/or regulations, which is a felony offense with a penalty of up to five years in federal prison. Also, calling Carolyn a "thief" and "con artist" accuses her of

a felony misconduct and willful securities fraud.  The Defendants' conduct caused severe mental and emotional damage and anxiety because Carolyn was subjected to people driving by her house slowly, walking past and pointing at her house, and shunning of her and her children because it subjected Carolyn to hatred, distrust, ridicule, contempt, and disgrace from her community by accusing her of being a liar, thief, and skilled con artist. Therefore, this document constitutes libel *per se* and damages are presumed.

54.    The Defendants, by creating and attaching their composite of the false and defamatory excerpts from the *Vail Daily* Article and publishing it to Carolyn's neighbors in her community, the Defendants repeated the defamations of the *Vail Daily* Article by republishing the false and defamatory information to peoples likely to know and have contact with Carolyn in her new community. These Defendants are liable for publishing the false and defamatory article to Carolyn's new neighbors. The defamation Defendants repeated includes: (1) Ms. Anderson was sued for a scam, (2) the SEC claims Ms. Anderson defrauded investors of $5.3M, (3) Ms. Anderson was sued by the SEC for a ponzi scheme, (4) Ms. Anderson was part of a ponzi scheme, (5) the SEC sued Ms. Anderson for scamming 18 investors out of more than $5.3M, (6) a retired football player is one of a dozen and a half people that the SEC says Ms. Anderson scammed, (7) Ms. Anderson transferred more than $2.3 million in investor money to companies owned by Ms. Anderson, and (8) the SEC is charging Ms. Anderson with securities fraud.

55.    All these various statements of fact contained in the Vail Daily that falsely state that Carolyn was sued by the SEC for Carolyn's participation in criminal and fraudulent schemes were defamatory because they subject Carolyn hatred, contempt, and ridicule and accuse her of crimes of moral turpitude.

56.     The Defendants, by creating and attaching their composite of the false and defamatory excerpts from the *Vail Daily* and publishing it to Carolyn's neighbors in her community with the Defendants false and defamatory comments typed above the composite, the Defendants created a false impression that the published article is true, but the typed comments attempted to convince the neighbors that Carolyn is actually more of a fraudster and con artist than the *Vail Daily* Article portrays. Defendants' false and defamatory statements buttress the *Vail Daily* Article and further create the implication that Carolyn is a reprehensible person, so reprehensible that anonymous persons were compelled to inform Carolyn's entire new community of her supposed criminality. The fact that the accusations made by Defendants and the *Vail Daily* Article are false and defamatory only adds to the damaging implication that these statements created. The introductory remarks to the *Vail Daily* Article represent Carolyn in a worse light than any true statements that the *Vail Daily* Article may convey. This is defamation by implication.

57.     Defendants terrible message and actions caused unspeakable damage to Carolyn's reputation and standing among the neighbors and acquaintances with whom Carolyn had contact within her small, gated community and near her community in Ponte Vedra, Florida. Defendants' publication also subjected Carolyn to hatred, distrust, ridicule, contempt, and disgrace from her community which caused severe mental and emotional distress and extreme anxiety and paranoia and fear requiring additional therapy and an increase in medications. Additionally, Carolyn became fearful and anguished and had paranoia for fear that she or her children were in danger of physical attack and

harassment. Carolyn has become anguished and fearful for her and her family's wellbeing and safety.

58.     The Defendants' malevolent document and actions caused Carolyn and her children to be shunned and looked upon with suspicion which caused fear and severe emotional distress. The gossip created by the defamation spread like wildfire to many community members, even those who had not received the insert. Several neighbors, who were previously friendly and communicative, changed their conduct and ceased their association with Carolyn and her children. Several mothers who had previously encouraged their children to befriend Carolyn's children, abandoned those efforts, cancelled playdates and overnight stays, and conjured excuses as to why they were unavailable. Carolyn's personal and business reputation has been ruined from the false defamation Defendants intentionally and maliciously published.

## H.   Defendants' Outrageous Conduct was a Deliberate Infliction of Emotional Distress

59.     As alleged earlier, Defendants have specifically stalked, pursued, and targeted Carolyn across the entire country in order to expose Carolyn to false and defamatory statements of fact with the intent of causing mental and emotional harm to Carolyn and her ability to live in her community.

60.     Carolyn had already been in a particularly susceptible and frail state after her husband's loss and from the misguided backlash from victims of Mike Anderson's fraud. Defendants knew of Carolyn's grief and emotional distress from these recent experiences, they were close friends of hers. Defendants actions have exacerbated Carolyn's mental suffering from the loss of her husband and the investor backlash which

has caused severe emotional distress, anxiety, and other mental illnesses, which have caused her considerable damages.

61.     Defendants' outrageous conduct of stalking Carolyn across the country, disclosing composite copies of the Vail Daily article structured in a way to achieve the most impact and by publishing these false and defamatory Vail Daily article as well as the typed defamation and targeting Carolyn in her new community in Florida goes beyond all bounds of decency in a civilized society.

62.     These Defendants, by reason of their personal experience of never speaking to Carolyn about any part of Mike's business and their personal knowledge of Mike's ability to present himself and knowing of Carolyn's complete cooperation with the Vail PD and the SEC and knowing the details of Mike Anderson's confession, and other facts, these Defendants knew that Carolyn was not part of Mike's business and did not participate in Mike's securities fraud.

63.     These Defendants knew that any contradiction of Carolyn's innocence and non-participation in Mike's securities fraud scheme would be untruthful and improper and would cause severe emotional damage to Carolyn Anderson, especially because (1) these Defendants knew that Carolyn was emotionally fragile because of Mike's suicide and its impact upon her and her two children, and (2) these Defendants knew Carolyn was very stressed and had significant emotional trauma because some of Mike Anderson's investors wrongfully suspected of Carolyn being complicit with Mike Anderson's securities fraud, and (3) these Defendants knew that Carolyn suffered significant fear, distress, anguish and humiliation because of she was stalked by Mike Anderson's investors, and (4) these Defendants knew that Carolyn was emotionally

traumatized by her need to hire a lawyer and because of her frequent contact with the Vail PD and the SEC, and (5) these Defendants knew that Carolyn was extraordinarily fearful that one of Mike's investors would target Carolyn and/or her children for physical harm, and (6) these Defendants  knew that Carolyn was particularly susceptible to fear, humiliation, anxiety and distress by being menaced by those who read the false and defamatory *Vail Daily* Article, and (7) These Defendants knew that Carolyn relocated to Florida to avoid the physical and mental distress and paranoia of being in Vail where former friends, investors and strangers were misled by the false and defamatory *Vail Daily* Article.

64.     This conduct has caused Carolyn severe emotional distress.

**I.      All Conditions Precedent are Satisfied**

65.     On November 20, 2018, Ms. Anderson, through her counsel, sent a notice of intent to sue for malicious defamation to these Defendants and a copy of the letter and the mailing confirmation of delivery is attached as Exhibit D.

**COUNT I**
**LIBEL *PER SE***

66.     Plaintiff repeats and re-alleges all the allegations in paragraph 1 through 65 as if set forth fully herein.

67.     As described in paragraphs 29 and 30, Defendants published the defamation by creating a document on a 8.5" x 14" sheet of paper and typed statements of fact and cut out and custom mounted the *Vail Daily* Article on to the document, which they then sent to more than twenty people in Carolyn's new community including her neighbors, her children's teachers, her children's boy scout leader, her community manager, and others. [Exhibit C].

68.     The composite document created by the Defendants was purposely structured to review quickly and to cause the most damage to Carolyn's name and reputation and this document created by Defendants [Exhibit C] contained the following false statements as libel *per se*:

- After fleeing Vail, Colorado where, over five years, she and her husband defrauded investors of $5.3 million dollars.

- The injured parties were from both Colorado and Florida.

- Carolyn is a compulsive liar, thief, and skilled con artist.

- Do not trust Carolyn or anyone associated with her.

- Vail widow sued for scam

- Securities and Exchange Commission lawsuit claims woman and now-deceased husband defrauded investors of $5.3M.

- Carolyn Anderson sued by SEC and investigated by Vail police for alleged ponzi scheme

- VAIL – A federal financial watchdog is suing the widow of a former Vail resident, saying she was part of her deceased husband's ponzi scheme.

- The Securities and Exchange Commission sued Carolyn Anderson in Denver District Federal Court last week, claiming that she and husband Michael Anderson scammed 18 investors out of more than $5.3 million between March 2014 and his death on Feb. 27, 2017. Many of those people considered the Andersons to be close friends, the SEC said.

- Retired Baltimore Ravens tight end Quinn Sypniewski . . . was one of a dozen and a half people who the SEC says the Andersons scammed. \

- Meanwhile, the Andersons transferred more than $2.3 million in investor money to Bighorn Wealth Fund L.P., Rainbow Foundation and Seaoma, all based in Vail and all owned by Michael and Carolyn Anderson, the SEC said.

- SEC attorney Leslie Hughes is charging Carolyn Anderson with securities fraud and is asking for a jury trial in U.S. District Court in Denver before Chief Judge Marcia S. Krieger.

69.     These preceding statements are false as shown by the exact statements of the SEC Complaint, the SEC Litigation Release, the Vail PD Report, Carolyn's own statements to the Defendants, and the Defendants' first-hand knowledge of Mike Anderson's business and proof that Carolyn was a victim of Mike Anderson's securities fraud and other information that will be shown as proof at trial. All of this information shows that the statements Defendants made are false and defamatory and harmed the name and reputation of Carolyn Anderson.

70.     Based on their access to and knowledge of this information, Defendants had knowledge or were negligent or acted with reckless disregard as to the falsity of the composite document of the *Vail Daily* Article and the defamatory typed message which Defendants knowingly and purposely published to Carolyn new community.

71.     At minimum, defendants acted negligently on the falsity of their publication because they did not use reasonable care in determining the falsity of their publication before hurling the false assertions towards Carolyn's new community. Defendants were negligent in failing to review and understand the allegations in the complaint filed by the SEC, the SEC Litigation Release, the Vail PD Investigative Report, and were negligent in failing to follow fundamental rational practices for verifying the scandalous facts they published. Nowhere in the SEC Complaint is Carolyn accused of any wrongdoing, instead the SEC's narrative is that Carolyn's name was used as a "front" for Mike Anderson to create and perpetuate his fraudulent scheme and this was known to these Defendants because of their personal experience with Mike Anderson.

72.     As alleged earlier, Carolyn was not a participant in Mike Anderson's securities fraud scheme and Carolyn is not a compulsive liar, thief, or skilled con artist.

Therefore, the defamatory statements in paragraph 68 accuse her of felonies and subject her to hatred, contempt, and ridicule, which constitute libel *per se.* These false statements of fact easily led those exposed to Defendants' publication to identify Carolyn as dishonest, immoral, fraudulent, and criminal.

73.     The publication of these statements would foreseeably harm Carolyn and cause her to be viewed with suspicion, feared, shunned, and cause her severe emotional distress, humiliation, and anxiety about the safety and will-being of her and her children.

74.     By such publication to her new neighbors and other parties, Defendants caused significant harm to Plaintiff's reputation and caused her to be shunned, viewed with suspicion, created significant fear for her safety as well as severe emotional distress, grief, fear, and anguish.

75.     As a direct and proximate result of these statements by the Defendants, Carolyn has suffered significant damages.

WHEREFORE, Plaintiff demands judgment in her favor for at least $2.5 million for compensatory damages, the exact amount to be determined at trial, plus interest, costs, attorneys' fees, and punitive damages for Defendants' wanton, reckless, and intentional conduct and for such other relief as is just and proper.

**COUNT II**
**LIBEL *PER QUOD***

76.     Plaintiff repeats and re-alleges all the allegations in paragraph 1 through 65 as if set forth fully herein.

77.     As described in paragraphs 29 and 30, Defendants published the defamation by creating a document on a 8.5" x 14" sheet of paper and typed statements

of fact and cut out and custom mounted the *Vail Daily* Article on to the composite document, which they then sent to more than twenty people in Carolyn's new community including her neighbors, her children's teachers, her children's boy scout leader, her community manager, and others. [Exhibit C].

78.   The document created by Defendants [Exhibit C] contained the following false statements as libel *per quod*:

- After fleeing Vail, Colorado where, over five years, she and her husband defrauded investors of $5.3 million dollars.

- The injured parties were from both Colorado and Florida.

- Carolyn is a compulsive liar, thief, and skilled con artist.

- Do not trust Carolyn or anyone associated with her.

- Vail widow sued for scam

- Securities and Exchange Commission lawsuit claims woman and now-deceased husband defrauded investors of $5.3M.

- Carolyn Anderson sued by SEC and investigated by Vail police for alleged ponzi scheme

- VAIL – A federal financial watchdog is suing the widow of a former Vail resident, saying she was part of her deceased husband's ponzi scheme.

- The Securities and Exchange Commission sued Carolyn Anderson in Denver District Federal Court last week, claiming that she and husband Michael Anderson scammed 18 investors out of more than $5.3 million between March 2014 and his death on Feb. 27, 2017. Many of those people considered the Andersons to be close friends, the SEC said.

- Retired Baltimore Ravens tight end Quinn Sypniewski . . . was one of a dozen and a half people who the SEC says the Andersons scammed.

- Meanwhile, the Andersons transferred more than $2.3 million in investor money to Bighorn Wealth Fund L.P., Rainbow Foundation and Seaoma, all based in Vail and all owned by Michael and Carolyn Anderson, the SEC said.

- SEC attorney Leslie Hughes is charging Carolyn Anderson with securities fraud and is asking for a jury trial in U.S. District Court in Denver before Chief Judge Marcia S. Krieger.

79.     These preceding statements are false as shown by the exact statements of the SEC Complaint, the SEC Litigation Release, the Vail PD Report, Carolyn's own statements to the Defendants, and the Defendants' first-hand knowledge of Mike Anderson's business and proof that Carolyn was a victim of Mike Anderson's securities fraud and other information that will be shown as proof at trial. All this information demonstrates that the statements Defendants made are false and defamatory and harmed the name and reputation of Carolyn Anderson.

80.     Based on their access to and knowledge of this information, Defendants had knowledge or acted with reckless disregard as to the falsity of their document, which they published to Carolyn's new community.

81.     At minimum, defendants acted negligently on the falsity of their publication because they did not use reasonable care in determining the falsity of their publication before hurling the false assertions towards Carolyn's new community. Defendants were negligent in failing to review and understand the allegations in the complaint filed by the SEC, the SEC Litigation Release, the Vail Police Department Investigative Report, and were negligent in failing to follow fundamental rational practices for verifying the scandalous facts they published. Nowhere in the SEC Complaint is Carolyn accused of any wrongdoing, instead the SEC's narrative is that her name was listed for companies that Michael Anderson transferred funds to. And Michael Anderson had explicitly used her name to create these companies.

82.    As alleged earlier, Carolyn was not a participant in Mike Anderson's securities fraud scheme and Carolyn is not a compulsive liar, thief, or skilled con artist. The defamatory statements assert she has committed felonies, scammed her close friends, defrauded investors of millions, and is being investigated and sued by the SEC for these actions. These false statements of fact easily led those exposed to Defendants' publication to identify Carolyn as dishonest, immoral, fraudulent, and criminal.

83.    The publication of these statements would foreseeably harm Carolyn, cause her to be viewed with suspicion, feared, shunned, and cause her severe emotional distress, humiliation, and anxiety about her safety and well-being.

84.    By such publication to her new neighbors and other parties, Defendants caused significant harm to Plaintiff's name and reputation and caused her to be shunned, viewed with suspicion, created significant fear for her safety as well as severe emotional distress, grief, fear, and anguish.

85.    Defendants terrible message and actions caused unspeakable damage to her reputation and standing among the many people with whom Carolyn interacted with in and near her community in Ponte Vedra, Florida. Carolyn's neighbors ceased association with her and abandoned plans with Carolyn. Additionally, Carolyn has become anguished and fearful for her and her family's wellbeing and safety.

86.    The Defendants' malevolent document and actions caused Carolyn and her children to be shunned and looked upon with suspicion which caused fear and severe emotional distress. The gossip created by the defamation spread like wildfire to many community members, even those who had not received the insert. Several neighbors, who were previously friendly and communicative, changed their conduct and ceased their

association with Carolyn and her children. Several mothers who had previously encouraged their children to befriend Carolyn's children, abandoned those efforts, cancelled playdates and overnight stays, and conjured excuses as to why they were unavailable. Carolyn's personal and business reputation has been ruined from the false defamation Defendants intentionally and maliciously published.

87.   As a direct and proximate result of these statements by the Defendants, Carolyn has suffered damages.

WHEREFORE, Plaintiff demands judgment in her favor for at least $2.5 million for compensatory damages, the exact amount to be determined at trial, plus interest, costs, attorneys' fees, and punitive damages for Defendants' wanton, reckless, and intentional conduct and for such other relief as is just and proper.

## COUNT III
## DEFAMATION BY IMPLICATION

88.   Plaintiff repeats and re-alleges all the allegations in paragraphs 1 through 65 as if set forth fully herein.

89.   Defendants incorporated the *Vail Daily* Article into its document that it published and mailed to dozens of members in Carolyn's new community in Ponte Vedra, Florida.

90.   Defendants included the following messages before the *Vail Daily* Article:

- After fleeing Vail, Colorado where, over five years, she and her husband defrauded investors of $5.3 million dollars.

- The injured parties were from both Colorado and Florida.

- Carolyn is a compulsive liar, thief, and skilled con artist.

- Do not trust Carolyn or anyone associated with her.

[See Exhibit C].

91.     The Defendants' publication of the false and defamatorily documents and statements implied that any accusations or allegations which appeared in the *Vail Daily* Article speaks of are, in fact, true and the SEC charged Carolyn with the securities fraud.

92.     Defendants additional language before the document creates the impression that the accusations discussed in the *Vail Daily* Article have been proven, which creates the impression that the SEC has conclusively determined that Carolyn committed a ponzi scheme that defrauded investors. The SEC's case does not even accuse Ms. Anderson of wrongdoing, let alone securities fraud, thus these additional statements make a defamatory implication against Ms. Anderson.

93.     The introductory remarks combined with the *Vail Daily* Article imply Ms. Anderson has committed felonies, scammed her close friends, defrauded investors of millions, and is being investigated and sued by the SEC for these actions. This implication easily led those exposed to Defendants' publication to identify Carolyn as dishonest, immoral, fraudulent, and criminal.

94.     These implication that the statements before the *Vail Daily* Article make is false as shown by the private lawsuit, the SEC Complaint, the SEC Litigation Release, the Vail Police Report, Carolyn's own statements to the Defendants, and the Defendants' first-hand knowledge of the Mike Anderson's business, the fraud perpetrated by Carolyn, and other information that will be shown through litigation. All of this information, and more that will be proven at trial, shows that the implication the Defendants made is false.

95.     Based on their access to and knowledge of this information, Defendants had knowledge or acted with reckless disregard as to the falsity of their document, which they published to Carolyn's community.

96.     At minimum, defendants acted negligently on the falsity of their publication because they did not use reasonable care in determining the falsity of their publication before hurling the false assertions towards Carolyn's new community. Defendants were negligent in failing to review and understand the allegations in the complaint filed by the SEC, the SEC Litigation Release, the Vail Police Department Investigative Report, and were negligent in failing to follow fundamental rational practices for verifying the scandalous facts they published. Nowhere in the SEC Complaint is Carolyn accused of any wrongdoing, instead the SEC's narrative is that her name was listed for companies that Michael Anderson transferred funds to. And Michael Anderson had explicitly used her name to create these companies.

97.     Defendants published false statements of fact concerning Carolyn, which constitute defamation, because it easily led those exposed to the Defendants' publication to identify Carolyn as dishonest, immoral, fraudulent, and criminal.

98.     The publication of these statements would foreseeably harm Carolyn, cause her to be viewed with suspicion, feared, shunned, and cause her severe emotional distress, humiliation, and anxiety about her safety and well-being.

99.     By such publication to her new neighbors and other parties, Defendants caused significant harm to Plaintiff's reputation and caused her to be shunned, viewed with suspicion, created significant fear for her safety as well as severe emotional distress, grief, fear, and anguish.

100.   Defendants document accuses Carolyn of crimes of moral turpitude and perpetuated the completely inaccurate assertion that Carolyn was part of the investment scheme that defrauded her close friends and was guilty of conduct that was illegal, improper, fraudulent, immoral and criminal.

101.   As a direct and proximate result of these statements by Defendants, Carolyn has suffered damages to her reputation, her character, and she has suffered severe mental and emotional distress, humiliation, and anxiety.

WHEREFORE, Plaintiff demands judgment in her favor for at least $2.5 million for compensatory damages, the exact amount to be determined at trial, plus interest, costs, attorneys' fees, and punitive damages for Defendants' wanton, reckless, and intentional conduct and for such other relief as is just and proper.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

102.   Plaintiff repeats and re-alleges all the allegations in paragraphs 1 through 65 as if set forth fully herein.

103.   Defendants' deliberately stalked Carolyn and her family across the country and targeted her neighbors and acquaintances in her new community, and intentionally undertook actions, including mailing a document that was intended to maliciously harm Carolyn's name, character and reputation, all to inflict mental and emotional suffering on Carolyn.

104.   Defendants engaged in outrageous, willful, wanton or reckless conduct because they knew that Carolyn was in a particularly susceptible and frail state after the death of her husband and the misguided yet constant pressure and backlash from the

investors that Mike Anderson defrauded directed towards Carolyn. Defendants added to this backlash by stalking Carolyn to identify her new neighbors in Florida. Thereafter, the Defendants then specifically targeted Carolyn's new neighbors, new friends, her children's new teachers and boy scout leaders, and any other people that would likely have contact with Carolyn or know someone who does have such contact.

105.    Defendants then caused the false and defamatory publication it created to be disseminated to the persons identified and alleged previously herein, in order to specifically cause Carolyn to be fearful of retaliation and to evoke severe mental and emotional distress in Carolyn with caused her significant damages.

106.    Defendants above conduct was malicious, intentional, or reckless. Defendants' conduct is outrageous and goes beyond all bounds of decency in a civilized society. This level of misguided calculated revenge to destroy Carolyn's reputation and mental well-being goes beyond all bounds of decency.

107.    Defendants knew or should have known that severe emotional distress to the Plaintiff would follow from the willful, wanton, or reckless conduct because Defendants were close friends with Carolyn and were very aware of the frail and susceptible emotional state she was in after her husband's death and after all the backlash against her husband was redirected to Carolyn. Carolyn had left the state of Colorado to get a break from the emotional distress and yet the Defendants specifically stalked her and intentionally published false and defamatory documents and information calculated to destroy her name and reputation in her new community and to cause Carolyn severe mental and emotional distress and damage.

108.   Defendants acted with reckless disregard for the mental suffering that they could foresee their conduct was substantially certain to cause.

109.   Carolyn has suffered severe emotional distress that was directly and proximately caused by the Defendants' conduct, she has grown fearful, anxious, nervous, and is undergoing severe mental distress.

110.   Carolyn intends to seek punitive damages.

WHEREFORE Plaintiff demands judgment in her favor for at least $2.5 million for compensatory damages, the exact amount to be determined at trial, plus interest, costs, attorneys' fees, and punitive damages for Defendants' wanton, reckless, and intentional conduct and for such other relief as is just and proper.

## JURY DEMAND

The Plaintiff demands trial by jury on all issues to which she is entitled.

Dated: August 15, 2019

Respectfully Submitted,
s/ Gerald J. Houlihan
   Gerald J. Houlihan
HOULIHAN & PARTNERS, P.A.
1825 Ponce de Leon Boulevard, Suite 602
Miami, Florida 33134
Telephone: (305) 460-4091
Email: houlihan@houlihanlaw.com

Attorneys for Plaintiff Carolyn Anderson